UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EROTIQUE SHOP, INC. d/b/a CONDOMS & MORE, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:06-CV-2066-G |
| CITY OF GRAND PRAIRIE, TEXAS, | ) ) | **ECF** |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Erotique Shop, Inc. d/b/a Condoms & More ("the plaintiff" or "Erotique"), for a preliminary injunction. For the reasons set forth below, the motion is denied.

### I. BACKGROUND

This case arises out of the plaintiff's attempts to open a Condoms & More store ("the store") to sell lingerie, condoms, gag gifts, bachelorette supplies, and adult items. *See* Plaintiff's Complaint for Declaratory Relief, Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Complaint") at 4. Items sold in the store will

not be used by customers on the premises.  *Id.*   Moreover, the store is not intended to operate as a sexually oriented business ("SOB"), and the inventory of adult items will constitute only ten to twenty percent of the store's business.  *Id.*; Affidavit of Shashi Sharma ("Sharma Affidavit") ¶¶ 7, 9, *attached to* Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order ("Plaintiff's Motion").

The defendant, the City of Grand Prairie, Texas ("the defendant" or "the city"), regulates the operation and location of sexually oriented businesses through two city ordinances -- numbers 5916 and 5917.  *See* Plaintiff's Complaint, Exhibits A and B.  A sexually oriented business is defined as "[a]n adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, escort agency, nude model studio, or sexual encounter center, or any establishment who [sic] as one of its principle [sic] businesses is to rely on sexual material for income."  Ordinance 5916 at 11, *attached to* Plaintiff's Complaint *as* Exhibit A ("Ordinance 5916").  The terms "principle businesses" and "sexual material" are not defined, but the plaintiff's proposed store may come within the definition for an "adult bookstore" or "adult video store."  *Id.* at 7-8.  The definition of those terms includes any business that sells books or videos of an adult nature "as one of its principal business purposes."  *Id.*  Thus, for the store to be classified as a sexually oriented business, the city must determine that one of its principal business purposes is the sale of adult books, adult videos, or other "sexual material."  See *id.*

On September 14, 2006, the city issued Erotique a temporary certificate of occupancy, but it prohibited the store from opening until an inspection could be held to determine whether the store would be classified as a sexually oriented business. Sharma Affidavit ¶ 2.  Shortly after the temporary certificate of occupancy was issued, the city conducted an initial inspection and informed Erotique that a number of display items were problematic.  *Id.* ¶ 3.  Erotique removed those items but was still denied a certificate of occupancy on October 10, 2006, when the city determined the store should be classified as a sexually oriented business.  *Id.* ¶ 5.

In response to the city's decision to deny the store a certificate of occupancy, Erotique removed additional adult items from the store and made a second application for the certificate.  *Id.* ¶ 6.  On October 17, 2006, city officials conducted another inspection of the store.  *Id.*  The next day, the city rejected Erotique's second application for a certificate of occupancy.  *Id.*  Erotique then filed this suit on November 8, 2006, seeking declaratory and injunctive relief.

## II.  ANALYSIS

### A.  Findings of Fact

In accordance with this court's order of November 9, 2006 (Docket Entry 10), the plaintiff submitted proposed findings of fact and conclusions of law ("Plaintiff's Proposed Findings") on November 14, 2006 (Docket Entry 11), and the defendant submitted its response to the plaintiffs proposed findings of fact and conclusions of

law ("Defendant's Response to Proposed Findings") on November 17, 2006 (Docket Entry 13). The court will address each proposed finding of fact below:

 1. The court finds that the city regulates sexually oriented businesses through ordinance numbers 5916 and 5917, enacted in June, 1998. *See* Ordinances 5916 and 5917.

 2. The court finds that Ordinance 5916 was enacted to mitigate harmful secondary effects from sexually oriented businesses in the city. *See* Ordinance 5916 at 1.

 3. The court finds that the Grand Prairie City Council found that sexually oriented businesses cause increased crime and the downgrading of property values in the surrounding area. The city's finding was based on various studies and reports from other cities around the country. *See* Ordinance 5916 at 1-7.

 4. The court finds that the studies relied upon by the city do not specifically address the existence of negative secondary effects of businesses that offer adult materials such as erotic videos and magazines for off-premises viewing only. *See* Affidavit of Robert Bruce McLaughlin ("McLaughlin Affidavit") ¶¶ 32-89, *attached to* Plaintiff's Motion.

 5. The court finds that McLaughlin's report includes a review of other studies and McLaughlin disagrees with the conclusions of others regarding the regulation of off-premises adult retail stores in which adult erotic material comprises less than forty

percent of the store's inventory.  *See* Summary of Secondary Effects Analyses: Take-Home Only Adult Video Stores at xii-xiii, Exhibit B to McLaughlin's Affidavit ("McLaughlin Affidavit Exhibit B").

6. The court finds that there are conflicting opinions regarding the existence of harmful secondary effects associated with sexually oriented businesses that sell adult materials for off-site use.  *See* McLaughlin Affidavit ¶ 90; *cf.* Expert Report of Richard McCleary, Ph.D. ("McCleary Report") ¶ H, Appendix in Support of the City of Grand Prairies' Response to Plaintiff's Motion for Preliminary Injunction ("Defendant's Appendix") at 38-40.

7. The court finds that the inventory of Condoms & More consists primarily of lingerie, gag gifts, bachelorette supplies, and that adult items comprise less than twenty percent of the store's inventory.  *See* Sharma Affidavit ¶ 7.

8. The court finds that Condoms & More is designed solely for retail sale and off-premises use and consumption of all inventory.  See *id.*

9. The court makes no finding with respect to this proposed finding of fact; the court does not have sufficient evidence at this time to determine whether Condoms & More meets the definition of a sexually oriented business in Ordinance 5916.

10.  The court finds that Condoms & More has reduced its inventory of adult items so that less than ten percent of the store's inventory is now comprised of adult items.  See Sharma Affidavit ¶ 9.

11.  The court finds that the city issued a temporary certificate of occupancy to Condoms & More on September 14, 2006, and that the lease space for the store is in a newly constructed building.  See *id.* ¶¶ 2, 9.

12.  The court finds that the city has denied Condoms & More a certificate of occupancy due to its determination that the store will operate as a sexually oriented business.  See *id.* ¶¶ 5-6.

13.  The court finds that the definition of a sexually oriented business under Ordinance 5916 includes a business in which one of the principal business purposes or principal businesses is the sale of sexually explicit magazines or videos.  *See* Ordinance 5916 at 7-8, 11-12.

14.  The court finds that Ordinance 5916 does not define the phrases "principal business purposes" or "principal businesses."  See *id.* at 7-12.  The remaining portion of the plaintiff's proposed fourteenth finding of fact is moot in light of the court's other findings.

15.  The court finds that the city did not provide any threshold percentage of adult material that must comprise a store's inventory for the store to be classified as a sexually oriented business.  See *id.*  The court rejects the plaintiff's proposed finding

that the city's failure to provide such a percentage caused the denial of the plaintiff's certificate of occupancy.

16.  The court finds that the expenses for rent, utilities and costs to retain employees will require Erotique to abandon its lease space for Condoms & More if the store does not open.  *See* Sharma Affidavit ¶ 10.

### B.  Legal Analysis

To obtain a temporary restraining order, Erotique must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) granting the injunction will not disserve the public interest.  *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court.  *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760 F.2d 618, 621 (5th Cir. 1985).  Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried its burden of persuasion on each of the four factors.  *Id.*; *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citations omitted).

1. *Likelihood of Success*

When determining the likelihood of success on the merits, the court looks to the standards of the substantive law. See *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). Moreover, to prevail on a preliminary injunction, the movant's likelihood of success must be more than negligible, *Compact Van Equipment Company, Inc. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless the question presented by the litigant is free from doubt, *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.), *cert. denied*, 375 U.S. 829 (1963). As the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial likelihood of success factor may decrease. See *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Company*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.").

Because the restriction of a party's right to sell adult books and videos implicates the first amendment, the city must show that its restriction on sexually oriented businesses is a narrowly tailored time, place and manner regulation. See *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 291-92 (5th Cir.) (per curiam), *cert. denied*, 540 U.S. 982 (2003), *clarified by* 352 F.3d 938 (5th Cir. 2003). "To pass constitutional muster, a time, place, and manner regulation must be 'content-neutral,

. . . narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Id.* at 291.

In *Encore Videos*, the Fifth Circuit found that San Antonio's city ordinance regulating sexually oriented businesses met the constitutional requirements that the regulation be content neutral and that it serve a substantial government interest. *Id.* at 292-93. However, the court found that the ordinance was not narrowly tailored to address the harmful secondary effects associated with sexually oriented businesses. *Id.* at 295. "In order to meet the narrow tailoring requirement, the city was required to provide at least some substantial evidence of secondary effects specific to adult businesses that sell books or videos solely for off-site entertainment." *Id.* However, the city of San Antonio failed to meet this requirement, and the court found that businesses that limit the adult products they sell to off-site use "are less likely to create harmful secondary effects" because the store's customers "are less likely to linger in the area and engage in public alcohol consumption and other undesirable activities." *Id.*

In ruling on the motion for a temporary restraining order, this court found that Erotique was likely to prevail on the merits because the facts of this case appeared to be substantially similar to those in *Encore Videos*. First, the store proposed by Erotique would prohibit on-premises use of items purchased in the store. Furthermore, the studies relied upon by the city in drafting Ordinance 5916 do not appear to

differentiate between sexually oriented businesses that permit on-site use of adult items and those that sell such items strictly for off-site use. *See* Ordinance 5916 at 2-4. However, with its response to the plaintiff's motion for preliminary injunction, the defendant has now provided evidence that stores selling adult items solely for off-premises use do cause harmful secondary effects. *See* McCleary Report ¶ H, Defendant's Appendix at 38-40 (citing three studies which found that "off-premise-only" sexually oriented businesses produce similar negative secondary effects to on-premises sexually oriented businesses).

Because the city has provided evidence that businesses that sell adult items for off-premises use cause harmful secondary effects, the plaintiff has not demonstrated a clear likelihood of success on the merits.

2. *Irreparable Injury*

An irreparable injury is one that cannot be remedied by an award of economic damages. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Id.* Even though erotic forms of expression "enjoy less protection that some other forms of speech," they are still protected by the First Amendment. *Woodall v. City of El Paso*, 49 F.3d 1120, 1122 (5th Cir.), *cert. denied*, 516 U.S. 988 (1995). Because the defendant's denial of Erotique's certificate of

occupancy deprives the plaintiff of its First Amendment rights, Erotique has shown irreparable harm.

### 3. *The Threatened Injury*

Next the plaintiff must show that the injury it will suffer if the court denies the temporary restraining order is greater than the injury the defendant will suffer if the order is granted. If the temporary restraining order is not granted, Erotique avers that the expenses associated with maintaining the store -- including rent, utilities and costs to retain employees -- will force the plaintiff to abandon its business. Sharma Affidavit ¶ 10.

The defendant counters that granting the injunction will prevent the city from passing and enforcing laws to protect its citizens from the harmful secondary effects of a sexually oriented business. *See* Response to Plaintiff's Motion for Preliminary Injunction ("Defendant's Response") at 12. The plaintiff disputes the alleged negative impact on the community and has submitted evidence contradicting the city's allegation that businesses selling adult material for off-site use cause negative secondary effects. *See* McLaughlin Affidavit ¶ 90, *attached to* Plaintiff's Motion; *see also* McLaughlin Affidavit Exhibit B. In response, the defendant has provided reports and affidavits describing the harmful secondary effects that sexually oriented businesses selling adult items for off-premises use have on the community. *See generally* Defendant's Appendix. Moreover, if the store does cause the adverse effects

alleged by the city, that harm to the community would outweigh the harm to the plaintiff, because the plaintiff could open its business in another location.

Injunctive relief is an extraordinary remedy and a plaintiff must clearly carry the burden of persuasion on each factor in order to obtain the injunction. *Mississippi Power & Light Company*, 760 F.2d at 621. Because the defendant has offered credible evidence to support its position that the plaintiff's business would adversely effect the community, the plaintiff has not clearly shown that its potential injury outweighs the threatened injury to the city.

### 4. *The Public Interest*

The parties identify two public interests that are implicated in this case. The plaintiff notes that the public has an interest in protecting the First Amendment rights of individuals. *See* Plaintiff's Brief in Support of Temporary Restraining Order and Preliminary Injunction at 2. Granting the motion for a preliminary injunction would clearly serve this interest.

The defendant argues that denying the motion will serve the public interests of promoting "the health, safety, morals, and general welfare of the citizens of the City." *See* Defendant's Response at 12. Although the plaintiff disputes the contention that its business poses a threat to these interests, as noted in the previous section, Erotique has not clearly shown that off-premises sexually oriented businesses do not have

adverse secondary effects. Thus, the plaintiff has failed to show that granting the injunction will not adversely affect the public interest.

### III.  CONCLUSION

For the reasons stated above, the plaintiff's motion for a preliminary injunction is **DENIED**.

**SO ORDERED**.

November 28, 2006.

                                                _____
A. JOE FISH
CHIEF JUDGE